UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER A. GRIMMER,<br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>      Defendant. | §<br>§<br>§<br>§  Case # 1:18-cv-1155-DB<br>§<br>§  MEMORANDUM DECISION<br>§  AND ORDER<br>§ |

## INTRODUCTION

Plaintiff Jennifer A. Grimmer ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the Act) and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 15).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 12, 14. Plaintiff also filed a reply. *See* ECF No. 20. For the reasons set forth below, Plaintiff's motion (ECF No. 12) is **DENIED**, and the Commissioner's motion (ECF No. 14) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed her DIB application on April 3, 2014, and her SSI application on June 18, 2014. In both applications, Plaintiff alleged disability beginning April 3, 2014 (the disability onset date) due to: "cervical spine impairment, anxiety, and depression." Transcript ("Tr.") Tr. 270. Plaintiff's claims were denied initially on September 17, 2014, after which she

requested an administrative hearing. Administrative Law Judge Stephen Cordovani (the "ALJ") presided over a hearing held on May 18, 2017, in Buffalo, New York. Tr. 14-29. Plaintiff appeared and testified at the hearing and was represented by Amanda R. Jordan-Pugh, an attorney. Tr. 14, 37-81. Carrie E. Anderson, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on July 3, 2017 finding that Plaintiff was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Act. Tr. 11-29. On August 27, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-5. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

2

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his July 3, 2017 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014;

2. The claimant has not engaged in substantial gainful activity since April 3, 2014, the alleged onset date (20 CPR 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine and lumbar spine; right shoulder mild supraspinatus tendinopathy, a small superior anterior labral tear with an adjacent 5 mm paralabral cyst, and mild osteoarthrosis of the acromioclavicular joint; migraine headaches; generalized anxiety disorder; and major depressive disorder (20 CPR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix t (20 CFR 404.1520(11), 404.1525, 404.1526, 416.920(11), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b),[1] except the claimant: can occasionally climb ramps and stairs; can occasionally bend, kneel, crouch and crawl; can never climb ladders, ropes or scaffolds; can occasionally reach overhead with her right arm; cannot lift above shoulder level; can occasionally push and pull with her right arm; cannot work at unprotected heights or around dangerous moving mechanical parts; cannot be exposed to extreme heat or cold, or loud noise; can understand, remember and carry out simple instructions and tasks, with no supervisory duties, independent decision-making, or strict production quotas, and with

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

minimal changes in work routine and processes; and have frequent interaction with supervisors, co-workers and the general public;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on June 28, 1964, and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a));

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 3, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 14-29.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on April 3, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 29. The ALJ also determined that, for the application for supplemental security income, filed on June 18, 2014, Plaintiff is not disabled under section 1614(a)(3)(A) of the Act. *Id.*

## **ANALYSIS**

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ improperly rejected the medical opinion of Michael D. Calabrese, M.D. ("Dr. Calabrese"), Plaintiff's primary care physician, and as a result, the ALJ made a physical RFC determination that was not supported by

substantial evidence.[2] *See* ECF No. 12-1 at 1. In response, the Commissioner argues that the ALJ properly assigned Dr. Calabrese's opinion little weight and formulated Plaintiff's RFC based on all the evidence in the record. *See* ECF No. 14-1 at 6-7.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

As noted above, Dr. Cabrese was Plaintiff's primary care physician and completed a medical examination for employability in October 2015. Tr. 433-34. In an essentially "check-the-box" form, Dr. Calabrese noted Plaintiff's medical conditions to be cervical and lumbar spine disc disease with a positive MRI, muscle spasms, bilateral shoulder, and anxiety/depression. Tr. 433. Dr. Calabrese opined Plaintiff was moderately limited in walking, standing, sitting, lifting, carrying, pulling/pushing, bending, and climbing stairs and had no limitations in seeing, hearing, speaking, or using her hands. Tr. 434. He then explained his opinion was that Plaintiff should work in a sedentary position and must have the ability to change from sit, stand, and walk hourly and avoid lifting above the shoulders with both arms. *Id*. He further opined that Plaintiff was moderately limited in her ability to function in a work setting at a consistent pace. *Id*.

The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§

---

[2] The Court notes that Plaintiff has only raised an issue with respect to the physical impairments and limitations.

6

404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g.*, *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). Furthermore, as long as the ALJ is careful to explain his decision, he is entitled to reject portions of a medical opinion that conflict with other evidence in the record. *See Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) ("an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions").

Consistent with the treating physician rule, the ALJ acknowledged that Dr. Calabrese was Plaintiff's treating physician. Tr. 23. While that fact may tend to increase the weight generally entitled to a medical opinion, as noted above, it is not determinative. *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 F. App'x 34, 35 (2d Cir. 2017). In this case, the ALJ explained that he gave

the opinion little weight because Dr. Calabrese did not have Social Security program knowledge and his opinion was inconsistent, even with Plaintiff's own reports of her activity level. Tr. 26. These are appropriate reasons for giving the opinion less than controlling weight. The regulations specify that the ALJ may consider "the amount of understanding of our disability programs and their evidentiary requirements that a medical source has." *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). The regulations also specify the consistency of the opinion with the other evidence in the record and such other evidence includes Plaintiff's own statements about her abilities and limitations. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2010) (no error in crediting claimant's testimony of ability to lift 35 pounds over treating physician's limiting of claimant to lifting ten pounds). Thus, the ALJ cited appropriate reasons for giving the opinion little weight. Furthermore, as explained below, the ALJ's reasons are supported by substantial evidence.

With respect to Dr. Calabrese's lack of program knowledge (Tr. 26), Plaintiff argues the ALJ "speculated [that] Dr. Calabrese did not have program knowledge," and "Dr. Calabrese should not be punished" because he is not a consultant physician for the Social Security Administration. ECF No. 12-1 at 16-18. Accordingly, Plaintiff argues, Dr. Calabrese's opinion should not be discounted on that basis. *Id*. However, as noted above, this is a factor the ALJ may consider in discounting a treating source opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Although the ALJ did not cite specific evidence from the record demonstrating Dr. Calabrese's lack of program knowledge, Plaintiff has not cited any evidence to suggest that Dr. Calabrese did have such knowledge. There's no indication that he had reviewed agency guidelines or regulations or previously interacted with the agency on specific functional requirements. Further, his opinion of moderate limitations in walking, sitting, and standing would not necessarily equate with a

limitation to sedentary work. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (defining sedentary work). Based on the foregoing, the Court finds no error in the ALJ's decision to discount Dr. Calabrese's opinion based on his lack of program knowledge.

The ALJ also properly considered that Dr. Calabrese's opinion was inconsistent with, and contradicted by, Plaintiff's activities of daily living. *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (ALJ correctly considered daily activities in evaluating subjective complaints). Although Dr. Calabrese opined Plaintiff had these moderate limitations, the ALJ noted Plaintiff had regular shopping trips, was involved with her church, and could perform household chores such as cooking, cleaning and vacuuming. Tr. 26. Despite Plaintiff's attempts to minimalize her statements about her activities (*see* ECF No. 12-1 at 17), there is substantial evidence supporting the ALJ's findings regarding Plaintiff's activities of daily living. Tr. 18-27. Plaintiff testified that she shops twice a week, that she is able to do the cleaning, vacuuming, sweeping, and cooking in her house, and that she attends church. Tr. 51-52, 66, 74. Plaintiff contends the ALJ erred because he failed to note that Plaintiff does not carry her own bags when she goes shopping and he did not discuss how often Plaintiff vacuums and sweeps. *See* ECF No. 12-1 at 18. However, the ALJ still properly noted she can perform those activities. Plaintiff also testified she was active in her church. At one point during her testimony she said she only watched church services on television (Tr. 66), but she later testified that she attended church once a week and planned go more now that the weather was warmer (Tr. 74). Additionally, even if Plaintiff can identify some facts that may be in her favor, that does not detract from the substantial evidence supporting the ALJ's decision. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Thus, the ALJ's reasons are supported by substantial evidence, and the Court finds no error in the assignment of little weight to Dr. Calabrese's opinion.

Plaintiff also contends the ALJ made the RFC without support of a medical opinion or performing a function-by-function assessment. The RFC is the most a claimant can do despite her impairments. *See Woodmancy v. Colvin*, 577 Fed. App'x 72, 74 n.1 (citing 20 C.F.R. § 404.1545(a)(1)). It is the ALJ's responsibility to evaluate all of the medical evidence and assess the RFC. *See* 20 C.F.R. §§ 404.1527, 404.1545. While an ALJ will consider medical opinions on a claimant's functioning, ultimately the ALJ is tasked with reaching an RFC assessment based on the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."); *see also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.") (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("[w]e therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict")). In weighing an opinion, the ALJ may consider the degree to which it is consistent with the record and supported by the provider's own findings. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). It is within the ALJ's discretion to resolve genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

Contrary to Plaintiff's contention (*see* ECF 12-1 at 18-21), the ALJ did not make the RFC finding based on raw medical data or his own lay medical judgment, but instead evaluated all of the evidence, including weighing medical opinions and considering treatment notes. Tr. 18-27. Even if there is no supportive functional assessment from a physician, the RFC can still be supported by substantial evidence, including treatment notes and Plaintiff's own testimony. *See*

*Johnson v. Colvin*, 669 F. App'x 44 (2d Cir. 2016); *see also Monroe v. Colvin*, 676 F. App'x 5 (2d Cir. 2017) (The court found substantial evidence supported ALJ's RFC for unskilled work, despite lack of supportive functional assessment from a medical source. For substantial evidence, the court cited normal mental status findings and extensive activities, including vacations and outdoor recreation). As discussed below, the ALJ cited to the various treatment notes, exams, and diagnostic testing to support the limitations included in the RFC. Tr. 18-27.

The ALJ noted MRIs and x-rays of Plaintiff's neck and lumbar spine that showed some abnormalities. Tr. 23, 381-82, 389-90, 391-412, 413-32. In February 2015, Plaintiff was referred to Minsoo Kang, M.D. ("Dr. Kang"), at Dent Neurological Institute. Tr. 933-36. On initial exam, Dr. Kang stated: "at this juncture, [he did] not appreciate any evidence of cervical radiculopathy, especially at the C5-6 level, where the MRI scan showed the most significant changes," and determined she should be treated "conservatively." Tr. 935. Dr. Kang noted Plaintiff demonstrated no further neurological signs on exam, which revealed normal reflexes, full motor strength, and well-preserved sensory functioning. *Id*. The record reflects that Plaintiff received several trigger point injections for pain and other nerve block injections for pain. Tr. 886-932. In July 2015, Plaintiff reported "meaningful decrease in neck pain and related headache following past injections." Tr. 925. The ALJ also noted the mild abnormal findings related to her right shoulder and the treatment, including physical therapy Plaintiff received for the pain in her right shoulder. Tr. 24, 883-84, 678-81.

In July 2016, orthopedic surgeon William Wind, M.D. ("Dr. Wind"), examined Plaintiff and noted a full range of motion in her neck with no pain, and no tenderness in her right paraspinal muscles or right trapezius. Tr. 711. He noted some atrophy and crepitation of the right shoulder, but no obvious instability and 4+ or 5/5 strength in all muscle groups. Tr. 711-12. The ALJ also

11

noted Plaintiff's numerous visits to the emergency room in 2014, 2015 and 2016, complaining of pain and requesting pain medication (Tr. 24-25, 682-709, 720-55), even though she was under treatment at the same time by a pain management specialist (Tr. 442-48). All of this evidence in combination shows Plaintiff had severe impairments that limited her ability to work, which the ALJ incorporated into the RFC for a reduced range of light work.

Plaintiff contends the ALJ used his medical judgment by setting specific functional limitations. *See* ECF No. 12-1 at 18. However, as noted above, it is the ALJ's duty to evaluate and assess the RFC. *See* 20 C.F.R. §§ 404.1527, 404.1545, 404.1546; *Matta*, 508 F. App'x at 56. An ALJ considers medical opinions as to a claimant's level of functioning, but he must ultimately reach an RFC assessment based on the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Accordingly, the ALJ's factual finding of assessing the RFC is not medical judgment, but the ALJ's duty in evaluating all of the medical evidence to assess the RFC. Further, there is no gap in evidence in the record. Even though the ALJ gave little weight to Dr. Calabrese's opinion, there was sufficient other evidence in the record on which the ALJ could base his decision. Plaintiff also contends the ALJ erred by not explicitly including a function-by-function analysis. However, this is not required, where, as here, the ALJ's decision was supported by the record, and he applied the correct legal standards. *See Cichoki v. Astrue*, 729 F.3d 172 (2d Cir. 2013). In this case, the ALJ addressed all of Plaintiff's relevant limitations, and as noted above, the ALJ's RFC assessment is supported by substantial evidence.

Based on the foregoing, the Court finds no error in the ALJ's assessment of the medical opinion evidence or his RFC finding.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE